## PITTSBURGH, CINCINNATI, CHICAGO & ST. LOUIS RAILWAY COMPANY *v.* NEWSOM.

[No. 5,191. Filed April 20, 1905.]

1. PLEADING.—*Complaint.—Railroads.—Failure to Maintain Cattle-Guards.*—A complaint for damages on account of injuries to stock by reason of a railroad company's failure to provide suitable cattle-guards, as provided by statute (Acts 1885, p. 224, §1, §5323 Burns 1901), needs no averment that defendant's railroad was in existence at the passage of such statute or that such railroad was completed twelve months before the happening of the injuries. p. 302.

2. SAME.—*Complaint.—Railroads.—Killing Stock.—County.*—While a complaint against a railroad company for damages on account of stock killed must show in what county such stock was killed, still, it need not be done by a positive and direct allegation. p. 303.

3. SAME.— *Complaint. — Railroads.— Cattle-Guards.— Negligence in Maintenance.*—Where a complaint, after describing the defects in a railroad company's cattle-guard, alleges that by reason of such defects plaintiff's mules strayed upon the track and were injured and killed, it is sufficiently shown that such mules crossed such cattle-guard to get on such track. p. 304.

4. PLEADING.—*Complaint.—Railroads.—Stock.*—A complaint alleging that, because of defendant railroad company's failure to maintain proper and sufficient cattle-guards at a certain highway crossing, the plaintiff's mules strayed upon the line of such railroad at said crossing and were injured and killed, sufficiently shows that such mules were not killed on such crossing. p. 304.

5. SAME.—*Complaint.—Railroads.—Statutes.—Negativing Exceptions.*—Where a complaint against a railroad company alleges that, because of a negligently constructed cattle-guard, plaintiff's mules were injured and killed, it is not necessary to negative the exception in such statute giving railroads a certain time in which to construct such cattle-guards. p. 305.

6. APPEAL AND ERROR. — *Railroads. — Cattle-Guards. — Sufficiency.— Evidence.*—The Appellate Court will not disturb a verdict, rendered on conflicting evidence, that a cattle-guard was insufficient. p. 305.

7. STATUTES.— *Remedial.— Railroads.— Cattle-Guards.—* The statute (Acts 1885, p. 224, §1, §5323 Burns 1901) requiring railroad companies to provide cattle-guards at all highway crossings is remedial, and will be liberally construed. p. 307.

8. RAILROADS.— *Cattle-Guards.— Construction of.— Care Required.—* The duty exacted from railroad companies in the construction of cattle-guards by statute (Acts 1885, p. 224, §1, §5323 Burns 1901) is not to provide such as are in general use by first-class railroad companies, but to maintain such as are "suitable and sufficient to prevent" stock from getting on such railroad. p. 307.

9. TRIAL.—*General Verdict.—Answers to Interrogatories.*—Where answers to the interrogatories are not in irreconcilable conflict with the general verdict, the general verdict controls. p. 308.

From Bartholomew Circuit Court; *Francis T. Hord,* Judge.

Action by Williamson T. Newsom against the Pittsburgh, Cincinnati, Chicago & St. Louis Railway Company. From a judgment for plaintiff on a verdict for $1,500, defendant appeals. *Affirmed.*

*M. Z. Stannard* and *Charles S. Baker,* for appellant.
*Hacker & Spaugh* and *John W. Morgan,* for appellee.

WILEY, J.—Issues were joined and trial had upon the amended first paragraph of complaint, resulting in a verdict and judgment for appellee, who was plaintiff below. The jury found specially, by answering interrogatories submitted to them. The sufficiency of the amended first para-

graph of complaint was challenged by a demurrer, which was overruled. The answer was a denial. Appellant's motions for judgment on the answers to interrogatories and for a new trial were respectively overruled.

By its assignment of errors and argument of counsel in support thereof appellant is entitled to have reviewed the overruling of its demurrer to the amended first paragraph of complaint and the overruling of its motions for judgment on the answers to interrogatories and for a new trial.

The complaint avers that appellant is a corporation; that on the 14th day of September, 1902, it owned and operated, with locomotives and cars, a certain railroad in Bartholomew county, Indiana, and continues as follows: "That at said time a public highway in Flatrock township, in said county and State, running east and west, crossed said railroad at nearly right angles, said railroad running north and south; that said defendant at said time had a defective and insufficient cattle-guard where said highway used by the public crosses said railroad, which would not prevent mules and other stock from going along and upon said railroad; that said cattle-guard was defective in this: that there were thirteen slats between the iron rails of said track and six slats between each rail and the fence; that said slats were four inches thick and but four and one-fourth inches space between them at the top and but two inches space between them at the bottom; that they were set so close together that the hoofs of mules would not pass between them, and mules could walk on and over them onto said track; that on said day plaintiff was the owner and was possessed of twenty-three head of mules, which said mules then and there, in said county of Bartholomew and State of Indiana, by reason of the failure of said defendant to maintain a cattle-guard at said crossing sufficient to turn and keep them off of said railroad, strayed upon the line of said railroad at said crossing, and were run against, over and upon by a locomotive and cars, managed, controlled and operated

by said defendant, and eleven of said mules were killed and twelve were injured by being cut, wounded and bruised and crippled by said locomotive and cars, at said time." The complaint concludes by an averment of the value of the mules killed and injured, and a demand for judgment. Several objections are urged to the complaint, which we will dispose of in their order.

1. It is first contended that the complaint fails to aver that the railroad was in existence when the statute was passed requiring railroads to provide barriers and cattle-guards at public highway crossings, or that such railroad had been completed twelve months before the alleged injury. The statute requiring railroads to provide and maintain cattle-guards is a part of the fencing statute enacted in 1885 (Acts 1885, p. 224, §1, §5323 Burns 1901). So much of the statute as is applicable to the facts pleaded is as follows: "That any railroad corporation * * * running, controlling or operating, or that may hereafter construct, build, run, control or operate any railroad into or through this State, shall, within twelve months from the day of the taking effect of this act, as to those already completed, and within twelve months from the date of the construction and completion of any part of a line of road hereafter constructed * * * [construct] where the same has not already been done, and thereafter maintain at all public road and highway crossings now existing or hereafter established, barriers and cattle-guards suitable and sufficient to prevent cattle, horses, sheep, hogs and other stock from getting on such railroad." The statute further provides that for a failure to construct and maintain such barriers or cattle-guards such railroad corporation shall be liable for all damages resulting from such failure.

The cases cited by appellant upon the proposition under consideration are not in point, and therefore are not authority. True, the statute gives a railroad company twelve months from the date it became effective as to roads

then in operation, and twelve months from the date of the construction and completion of any part of a line of road thereafter constructed, to put in suitable barriers or cattle-guards. The complaint shows by direct averment that at the highway crossing described appellant put in such cattle-guard, but that it was defective. Specific facts are pleaded, showing wherein it was defective, and that by reason of such defect appellee's mules could and did pass over it. It never has been held in this jurisdiction that it is necessary to aver in the complaint against a railroad company for failure to construct and maintain barriers or cattle-guards, "suitable and sufficient to prevent cattle  *  *  *  from getting on such railroad," and by reason of which stock wandered on the railroad and was killed or injured, that the railroad was in existence when the statute became effective, or that it had been completed twelve months before the injury complained of. Nor can we perceive of any reason requiring such allegation.

2. It is next contended that the complaint is bad, for a failure to allege that the stock was killed and injured in the county where the action was commenced. It is true that such allegation is necessary. *Lake Erie, etc., R. Co.* v. *Fishback* (1892), 5 Ind. App. 403. It is not, however, necessary that a direct and positive allegation should be made. It is sufficient if it appears from the averments of the complaint that the animals were killed in the county where the suit was brought. The complaint avers a defective cattle-guard in "Flatrock township, Bartholomew county, State of Indiana;" that appellee was the owner of certain mules; that "said mules then and there in said county of Bartholomew and State of Indiana,  *  *  *  were run against, over and upon," etc. It also appears from an affirmative averment of the complaint that appellee's mules, by reason of this particular defective cattle-guard, "strayed upon the line of said railroad at said crossing." It would be difficult to put a construction upon the language used that

would lead to the conclusion that appellee's stock was not killed and injured in Bartholomew county, where this action was commenced. The complaint, in this respect, is sufficient.

3. It is next insisted that the complaint is bad because there is no direct averment that the animals entered upon the railroad by crossing over the alleged defective cattle-guard. While this averment is not a direct one, it sufficiently appears from the language employed that the animals did enter upon the railroad by passing over the alleged defective cattle-guard. This makes the complaint sufficient in this regard.

4. Counsel for appellant argue that it appears from the complaint that the animals were struck on the highway crossing, and, to support this theory, they quote the following from the complaint: "Strayed upon the line of said railroad at said crossing, and were run against," etc. Inadvertently counsel have omitted important words descriptive of the manner in which the mules entered upon the line of railroad. The language used by the pleader is plain and explicit, and is as follows: "By reason of the failure of said defendant to maintain a cattle-guard at said crossing sufficient to turn and keep them [the mules] off of said railroad, *strayed upon the line of said railroad* at said crossing, and were run against," etc. (Our italics.) It is thus made to appear in clear and explicit terms that the mules got onto appellant's line of road by passing over the cattle-guard, and there is no reasonable inference that they were killed at the highway crossing. Where a complaint avers a failure of duty imposed by statute, it is sufficient to allege such failure substantially in the language of the statute imposing the duty. *Blanchard-Hamilton Furniture Co.* v. *Colvin* (1904), 32 Ind. App. 398.

In *Wabash R. Co.* v. *Ferris* (1892), 6 Ind. App. 30, it was held that an allegation that horses went upon the railroad track by reason of appellant's failure to maintain suf-

ficient fences and cattle-guards was equivalent to an allegation that they went upon the railroad at a point where it was not securely fenced.

5. It is finally insisted that where the statute contains an exception, and an action is brought to recover damages for a violation of the statute, the complaint must state facts to show that the case does not fall within the exception. There can be no controversy upon this abstract proposition of law, for it is well established. The point of contention here is that it is not applicable to the facts pleaded and the statute under consideration. As above suggested, it is averred that appellant had constructed the cattle-guard, but that it was defective. The complaint, in our judgment, is sufficient and no error was committed in overruling the demurrer to it.

6. The questions presented by the overruling of the motions for a new trial and for judgment on the answers to interrogatories may be considered together, for they both involve the same legal principles. The only question discussed by counsel for appellant, arising under the motion for a new trial, is the giving and refusing to give certain instructions. As regards the averment in the complaint that the cattle-guard was defective and insufficient, there is some conflict in the evidence. That question was properly submitted to the arbitrament of the jury, and they settled it against the appellant, by their general verdict, and we can not disturb that finding.

The remaining questions for decision arise upon the evidence and the special answers as to the character of the cattle-guard. The guard was what is known as a "surface guard," and was constructed of wooden slats. These slats were parallel with the rails. There were thirteen slats between the rails and six between each rail and the wing fences on either side. These slats were securely nailed to the cross-ties. They were planed down to about an inch

at the top, and were about four inches apart at the top and about two inches at the bottom. They were so close together that a mule's foot would not go down between them. The evidence shows and the jury found that the cattle-guard in question was the kind in general use by first-class railroads; that it was a surface cattle-guard; that such guards were less dangerous to the traveling public than pit cattle-guards, and that appellee's mules crossed over the guard onto appellant's track, where they were killed and maimed.

It is earnestly and ably argued by appellant's counsel that, its having been established by undisputed evidence that the cattle-guard over which the mules passed was of the kind and character generally maintained by first-class railroad companies, it had fully complied with the statute, and was therefore exempt from liability, in the absence of wilfulness or negligence amounting to wantonness. On the other hand, counsel for appellee maintain that appellant has not performed the full measure of its statutory duty by constructing and maintaining such cattle-guards as are generally maintained by first-class railroads, where such cattle-guards are not "suitable and sufficient to prevent cattle, horses, sheep, hogs and other stock from getting on such railroad." The evidence shows and the jury answered that the cattle-guard was not constructed in such a way as to be suitable and sufficient to prevent appellee's mules from passing over it.

The pivotal question for decision, in the light of the evidence and facts in the special answers, as above indicated, is this: Can an action of this character be defeated by showing that a railroad company constructed and maintained cattle-guards such as are generally in use by first-class railroads, in the face of the fact that such cattle-guards are not suitable and sufficient to prevent stock from passing over them? If this inquiry can be answered in the affirmative the statute is nugatory and meaningless, and

might as well be abrogated. The trial court took the view of the law contended for by appellee, and held that though it had been established that the cattle-guard over which appellee's mules passed was such as is in general use by first-class railroad companies, appellant had not performed its full statutory duty, in view of the fact that this particular cattle-guard was not suitable and sufficient to prevent appellee's mules from getting on the track. The instructions given were in harmony with this view, and those refused presented the view of the law as contended for by appellant. We have stated the question for decision so fully that it is unnecessary to state even the substance of the instructions complained of and those refused.

7. The statute under consideration is not penal, but remedial, in its nature, and, being remedial, is entitled to be liberally construed in favor of the accomplishment of the object sought—"the fencing of the right of way, and the protection thereby of both the farmer and the traveling public." *Midland R. Co.* v. *Gascho* (1893), 7 Ind. App. 407; *Evansville, etc., R. Co.* v. *Huffman* (1904), 32 Ind. App. 425; *Chicago, etc., R. Co.* v. *Woodard* (1895), 13 Ind. App. 296; *Chicago, etc., R. Co.* v. *Vert* (1900), 24 Ind. App. 78.

8. In commenting upon the requirements and objects of such a statute, 2 Thompson, Negligence (2d ed.), §2082, says: "As to the sufficiency of such structures, the requirements are to the same effect and extent as are exacted of the company in regard to the fence itself, namely, that they should be sufficient to serve the purpose—to keep cattle out. The fact that the cattle-pit is built on a solid rock is not an excuse for having it of insufficient depth to exclude cattle. As the court sententiously remarked: 'Rocks may be removed by drills, gunpowder and fire.' It is not a defense, that the guard in question is the same in construction as those in general use, in the absence of proof that it satisfies the statutory requirements."

The case of *New York, etc., R. Co.* v. *Zumbaugh* (1897), 17 Ind. App. 171, is decisive of the question at issue in this case. In that case appellee's horses got on appellant's right of way by means of a defective and insufficient cattle-guard. The cattle-guard was what is known as the "National Surface Guard." The trial court specially found that the guard was in as good order as when first put in, "the deficiency, unfitness and insufficiency in said cattle-guard being inherent in its construction," and that it was insufficient and unsuitable to turn stock generally, etc. In deciding the question involved, this court said: "Where a railroad company fails to construct and 'maintain at all public road and highway crossings, * * * barriers, and cattle-guards suitable and sufficient to prevent cattle, horses, etc., getting on such railroad,' it can not be said that such railroad is securely fenced, within the meaning and spirit of §5323 Burns 1894 [Acts 1885, p. 224, §1], and where stock wander on a railroad right of way, by reason of insufficient and defective cattle-guards, and are killed or injured, the railroad company will be held liable. *McKinney* v. *Ohio, etc., R. Co.* [1864], 22 Ind. 99 ; *Indianapolis, etc. R. Co.* v. *Guard* [1865], 24 Ind. 222 [87 Am. Dec. 327] ; *Pennsylvania Co.* v. *Mitchell* [1890], 124 Ind. 473 ; *Banisler* v. *Pennsylvania Co.* [1884], 98 Ind. 220; *New York, etc., R. Co.* v. *Zumbaugh* [1894], 11 Ind. App. 107."

In *Pittsburgh, etc., R. Co.* v. *Eby* (1877), 55 Ind. 567, it was held that if a cattle-guard be in such condition that stock can pass over it from a highway onto the track of the railroad, such railroad is not "securely fenced," within the meaning of the statute.

The instructions given, considered as a whole, fairly and fully stated the law applicable to the facts proved. There was no error in refusing to give the instructions tendered by appellant.

9. The facts exhibited by the answers to interrogatories are not in irreconcilable conflict with the general verdict,

but, on the contrary, tend strongly to support it. In such case the general verdict must control. Appellant's motion for judgment on the answers to the interrogatories was properly overruled.

Judgment affirmed.